## COOPER v. SHANNON.

1. The court did not err in sustaining objections to a question propounded to the caveatrix on her direct examination as a witness, relative to efforts on her part to have the testator join with her in making certain gifts to the propounder. It did not appear at what time these efforts were made, and an answer to such question could not have any probative value so far as the question itself indicates.

2. Where, after a lengthy examination of a witness, the court excludes a large part of the testimony en bloc, and a part of it is objectionable, this ruling will not be disturbed upon a motion for new trial because other portions of the testimony may have been admissible.

3. The ruling made above in reference to the second ground of the amendment to the motion for new trial is applicable in principle and controlling upon the question involved by the assignment of error in the third ground.

4. Error is assigned upon the following charge of the court: "The court instructs you that the burden in this case is on Miss Shannon, the propounder, to make out a prima facie case by showing the factum of the will, and that it was executed by the testator, and at the time of its execution the testator apparently had sufficient mental capacity to make a will. If you find this has been done, the burden then shifts, and the burden of proof would then be on the caveatrix to establish her grounds of objection by a legal preponderance of the testimony." This charge correctly states the law upon the question to which it relates. That the court did not charge some other principle of law in connection therewith is not a good ground of attack upon the charge as given. *Ward* v. *Morris*, 153 *Ga.* 421 (112 S. E. 719); *Slaughter* v. *Heath*, 127 *Ga.* 747 (57 S. E. 69, 27 L. R. A. (N. S.) 1).

5. The court charged the jury, in part, as follows: "The court instructs you further that where a party has evidence within his power and within his reach by which he may repel a claim or charge against him and omits to produce it, or, having more certain and satisfactory evidence in his power, relies on that which is of a weaker and inferior nature, the presumption arises that the charge or claim is well founded; but this presumption may be rebutted." Error is assigned upon this charge as not authorized by the evidence. It is stated: "Counsel for each party argued to the jury and contended that the other party had failed to produce witnesses who would have given evidence material to the issues in the case. This argument and contention was first made by counsel for the propounder, and was replied to by counsel for the caveatrix, and was enlarged and extended by counsel for caveatrix." *Held:* Though there may be in the record no evidence to authorize this charge, yet where counsel for both parties to the case had argued to the jury and contended that the opposite party had failed to produce

Appeal and Error, 4 C. J. p. 1005, n. 68; p. 1029, n. 30.
Evidence, 22 C. J. p. 162, n. 70; p. 164, n. 75.
Trial, 38 Cyc. p. 1711, n. 19.
Wills, 40 Cyc. p. 1021, n. 12; p. 1272, n. 58; p. 1335, n. 76.

witnesses who would have given evidence material to the issues in the case, the giving of this charge was not reversible error. *Central of Ga. Ry. Co.* v. *Goodwin,* 120 *Ga.* 83 (5) (47 S. E. 641, 1 Ann. Cas. 806).

6. The court did not err in refusing to give to the jury the requested charge set forth in the 6th ground of the motion for new trial.

7. The court did not err in refusing a request to charge, in substance, that if the jury should find that the last will was consistent with an earlier will in the disposition made by the testator of his property, and if they should further find that the subsequent will did not contain an express clause of revocation, and also that the evidence does not show that the testator intended to revoke the earlier will by the latter will, then it would be the duty of the jury to find against the latter will, which is the one offered for probate.

8. Error is assigned upon the refusal of the court to give in charge the following as requested: "A testator has a sound mind for testamentary purposes only when he can understand and carry in mind, in a general way, the nature and situation of his property and his relations to the persons around him, to those who naturally have some claim upon his remembrance and to those in whom, and the things in which, he has been chiefly interested. He must understand the act which he is doing and the relations in which he stands to the objects of his bounty and to those who ought to be in his mind on the occasion of making his will." The court in the charge actually given sufficiently covered the question here dealt with, and the refusal to instruct the jury in the exact language of the request was not error.

No. 5907. JANUARY 11, 1928.

Appeal. Before Judge Pomeroy. Fulton superior court. January 6, 1927.

*Jones, Evins, Moore & Powers,* for plaintiff in error.

*Slaton & Hopkins,* contra.

BECK, P. J. Henry H. Tucker died leaving a will, under the terms of which all of his property was given to Miss Martha A. S. Shannon. Mrs. Henrietta T. Cooper, a sister of the testator, filed a caveat to the probate of the will. This caveat raised the question of the testamentary capacity of the testator, and upon that issue the case was tried. Upon appeal to the superior court the jury returned a verdict in favor of the will. The caveatrix made a motion for new trial, which was overruled, and she excepted.

1. The original motion for new trial contains the usual general grounds. By amendment several grounds were added, containing exceptions to rulings made pending the trial, and assigning errors upon certain charges of the court, as well as upon the refusal of requests to charge, duly offered by the movant. The first ground of the amendment to the motion assigns error upon a ruling sustaining objections of counsel for propounder to the following question

propounded to the caveatrix while she was on the stand as a witness: "Did you ever try to get your brother to join you in those gifts?" It does not appear that the court erred in sustaining the objections. There is nothing in the question, nor was anything stated in this ground of the motion, to show the time of the making of the gifts to which this question relates. It may have been many years before the date of the will offered for probate,—so long before that it could have no probative value as to the question under consideration.

2. The second ground of the amendment to the motion for new trial is as follows: "Because upon the trial of said case the following occurred: While the movant was on the stand testifying in her own behalf, and during the course of her cross-examination by counsel for the propounder of the alleged will, the following occurred: Q. ' Your mother then drew her will and made your brother, the alleged testator, and you executors of that will?' A. ' Yes.' Q. ' Now, that was in 1899?' A. ' I don't remember when the will was made. She died in 1904.' Q. ' Of course, during the time from 1880 until your father's death in 1899, he had an opportunity of observing his son's conduct, did he not; and from the time when these troubles began, as you say, with Mr. Henry Tucker, your mother had from that until 1899, which is nineteen years, to observe him, did she not?' A. ' Yes.' Q. ' Before she made you executor with your brother?' A. ' Because '— Q. ' Well, you can't go into what was in some one's else mind.' A. ' I am giving you what was in my mind.' At this point the jury was excused for the remainder of the day, and the following occurred in the absence of the jury.

"Gov. Slaton: ' I am only asking for the facts, not what anybody's opinion or conclusion was, and your honor has ruled that she can not testify what motive actuated her mother.'

"The Court: ' Mrs. Cooper, tell us what the explanation was you want to make.' The witness: ' My mother left my brother executor of her will and left me executrix because she said he could do nothing without me, and that I would keep the thing straight. She said she could not bear to slap him in the face and show she had no confidence in him.'

"Q. (By Mr. Jones): ' Did your father have anything to say about it?' A. ' The same thing. He said, "If I don't trust my

own son, who will trust him? If I don't leave him as executor, I will brand him as incompetent, and I can't do my own son that way. If I won't trust him, who will?" And my mother said: "Henry can't do anything crazy about this, because you are there." You see, that was just the crux of the whole business. I was there, and he was so crazy I could do nothing, and that is why I had to have a division.'

"Gov. Slaton: 'Now, we move to rule that out.'

"The Court: 'I will sustain the objection. I rule that Mrs. Cooper could not explain why her father or mother appointed Mr. Henry Tucker as executor.'

"Mr. Jones: 'Before your honor brings the jury back, I want to complete the record on that, and will ask her a few more questions.' Q. 'Mrs. Cooper, did you or not hear any discussion between your father and mother before your father's will was made, as to the appointment by your father of your brother, Henry Tucker, as executor of his will?' A. 'I did.' Q. 'In that discussion did your father assign any reason as to why he wanted to do it or was expecting to do it? What reason did he give?' A. 'Well, he said: "This is my only son. I have done everything on earth I could for him. Of course I know he is not competent; but if I show my lack of confidence in him, who else will have any confidence in him?" He said: "I know there is no danger in leaving him as executor, because his mother can always influence him, and she can keep him from doing any crazy thing with it; and for that reason, for the benefit of the public, I am going to leave him as my executor." He told me that a great many times.' Q. 'Now, Mrs. Cooper, with reference to the appointment of your brother as coexecutor with you under the will of your mother; were you present when that will was discussed with Judge Hillyer and with your mother?' A. 'I went with her.' Q. 'Who drew her will.' A. 'Judge George Hillyer.' Q. 'At the time of the drawing of that will, or prior to that time, did she make any statement to you about why she was going to appoint your brother as coexecutor with you?' A. 'Yes, sir, many times.' Q. 'State what she said with respect to that.' A. 'Well, she said: "I am going to leave you two joint executors. I can't bear to reflect on him; but if I leave you as executor with him, he can't do any crazy thing with it; you are there to restrain him." I said:

"Well, Mama, don't leave the estate that way. Don't leave me with Henry." She said: "Well, I must. It is the only thing I can do. I can't reflect on Henry. I can't leave him alone, if there is nobody to influence him, but I am going to put you with him, and I am going to tell Judge Hillyer the circumstances, and I am going to leave it to you so that you can control the situation, and I am going to insert it in the will that there can be a division made if it becomes unbearable." Q. 'That was the reason the partition proposition was put in there?' A. 'That is the reason.' Q. 'In the making of this will, when she came to the question of leaving him a life-estate in the property, did she have any reason to assign as to why she didn't leave it to him free and unincumbered?' A. 'Yes, she said: "There is no telling what he will do, and I am going to fix some of it so that it will be safe for you and your children." Q. 'Did she say anything about what he would likely do with it, as to whether he would give it to the Chinese.' A. 'He was crazy about the Chinese laundries. He frequented their places and would stay all night and talk to them, and they would come to the house to see him sometimes, and he read Confucius, and he talked about the Chinese a great deal, and Mama said he would do some crazy thing with his money, and Mama said, "I am going to tie up the Whitehall Street store so that you and your children will have something." So that was the reason, but she didn't tell him that she did it; she never dared to tell him. He never knew it until after her death, but I knew all about it, for I was there present.' "

At the conclusion of the examination of the witness covering the questions above indicated, counsel for caveatrix said to the court: "That is the testimony that we expect to elicit by these questions, and that, I understand, you have ruled out." To this statement by counsel the court made no response; but we will treat this as a properly made exception to the exclusion of the matters elicited by the examination set out above. While some parts of this evidence might have been admissible, portions of it were certainly objectionable. It contained in part mere conclusions of the parents of the testator and the caveatrix; and though some of these conclusions might be admissible to show the opinion of the deceased parents as to the mental condition of the son, some of the statements made by the parents, and sought to be intro-

duced by the above examination, were arguments upon their part and positive statements that their son, the testator, was "crazy," and other statements which were inadmissible because mere hearsay; and the ruling of the court rejecting the testimony entirely will not be reversed, even if some portions were admissible.

3. The third ground of the amendment to the motion is as follows: "Because upon the trial of the said case the following occurred: While Mr. J. J. Spalding, a witness in behalf of movant, was on the stand, and after he had testified, upon direct examination, that in his opinion Mr. H. H. Tucker was not of sound mind and did not have testamentary capacity in the years 1902 and 1903, and after he had also testified, upon cross-examination, that during those years he had, as attorney for Mrs. Cooper, movant, brought a partition proceeding against said H. H. Tucker, in which proceeding he had no guardian ad litem appointed for Mr. Tucker as an irresponsible person, and also that he had had a deed made by Mr. Tucker, made directly by Mr. Tucker to Mrs. Cooper, to one half of the estate that she was to get from her mother, the jury was excused by the court, and the following occurred: Mr. Spalding: 'Governor Slaton was asking me about Mr. King and I being familiar with the law and having brought a suit without having a guardian ad litem appointed, and having taken a deed from a man whom I testified that I did not think had testamentary capacity to make a will. I want to state the reason that that was done. When Dr. Cooper brought the case to me and employed me for Mrs. Cooper, he said, "Henry Tucker is crazy, and he is liable to kill you." I said: "Why, then he ought to be put in the asylum if he is crazy." He said: "No, I won't have that." He said that Dr. Elkin, who was then, or had been, a trustee in the State Sanitarium, had told him that if he went there and he got out, he would come back and kill them, kill the whole Cooper family, and he said that he didn't want anything of that kind to happen, and he said: "There is a provision under his mother's will that his property goes to him for life, and if he didn't have any children it goes to my wife; and if I put him in the asylum, the public will say I put him in the asylum to keep him from marrying and having children so that my wife would get the property." He said: "Now, I want you to separate this property and get it in shape so that my wife can handle whatever she

gets, without putting it in the record that he is crazy or insane." Gov. Slaton objected to the evidence on the ground that it was hearsay, and after argument the court sustained the objection. The witness: 'I want to state, furthermore, that the reason why I, representing my client, accepted a deed, was because I knew that Mrs. Cooper was getting the small end of it, and that if anybody ever undertook to set it aside that Mrs. Cooper would certainly get as much out of it as she was getting. Henry was getting the big end of it.'

"Mr. Jones: 'I want to ask these questions in the presence of the jury.'

"Gov. Slaton: 'In order to avoid any trouble, I will withdraw the question and the answer of Mr. Spalding with reference to which testimony is now offered.'

"After argument pro and con, the court ruled: 'Of course, the court will permit you to withdraw it, but I am going to rule on this evidence the same as I have ruled, and sustain the objection.'

"Mr. Jones: 'I ask permission to do this, to recall this jury, and for me to ask these questions; and then if your honor rules that out, let him withdraw the question in the presence of the jury. I think I am entitled to that.' At this point the jury returned to the box. Q. (By Mr. Jones.) 'Mr. Spalding, in reply to a question by Governor Slaton, you stated that as attorney for Mrs. Cooper you took a deed from H. H. Tucker to her half of the property in this division, and that you did not have a guardian ad litem appointed for Tucker. I want you to state to the jury the reason why you did that.' Governor Slaton: 'I object to that, because it goes into the mind of the witness, because it is a conclusion, and for the further reason that your honor has ruled on that.' The court: 'What is the purpose of this testimony, Mr. Jones?' Mr. Jones: 'The purpose of this now is to explain the reason actuating this witness in doing that very thing, in other words, not having a guardian ad litem appointed for a man whom he believed to be at the time incapable of making a will.' The court: 'The court will sustain the objection made by Gov. Slaton.'

"Governor Slaton: 'I want, for reasons which your honor knows, to withdraw the question to Mr. Spalding, and his answer, regarding the appointment of a guardian ad litem and the taking of a deed.' The court: 'Gentlemen of the jury, the counsel

withdraws the question and the answer of this witness with reference to the appointment of a guardian ad litem and the taking of a deed. The court instructs you now that that question and the answer are withdrawn from your consideration, and you will not consider them further in the case.'

"Mr. Jones: 'I want it understood, your honor, to complete this record, that I insist on my right to ask that question anyhow, and that I am not consenting to the sustaining of his objection.' The court: 'Well, do you renew the question?' Mr. Jones: 'Yes sir.' The court: 'And do you object, Gov. Slaton?' Gov. Slaton: 'Yes sir.' The court: 'Well, the court sustains the objection.'

"Movant insists that said judgment sustaining the objection to said testimony of the witness, J. J. Spalding, explaining his reasons for accepting the deed from H. H. Tucker and for not having a guardian ad litem appointed for him in the partition proceeding, was error for the reason that said evidence was admissible as explaining the reasons and conduct of the witness, notwithstanding his opinion that the said H. H. Tucker was of unsound mind." The ruling made above, in reference to the second ground, is applicable in principle and controlling upon the question involved by the assignment of error in the third ground.

4, 5. The rulings made in the 4th and 5th headnotes require no elaboration.

6. Error is assigned upon the refusal of a request to charge the jury in the language following: "And now I charge you that rules have been established by the law for the distribution of property upon the death of its owner intestate,—that is to say, without leaving a will; and one of the rules provides that in the event of the death of such owner without leaving a wife or child surviving him, his property shall go to and become the property of his brothers and sisters, if any. That is deemed by the law to be a reasonable disposition of such property, or one that the average man of sound and disposing mind and memory would desire to be made of his property under such circumstances. That does not mean that a man of sound mind may not by will make any other distribution of his property that he may desire, whether such distribution may be, or may appear to be, reasonable or unreasonable, but it does mean that when one seeks to set up a will by which the property of the alleged testator is diverted from the channels of

descent provided by law, and a caveat is filed thereto upon the ground that the alleged testator was not, at the time of the execution thereof, of sound and disposing mind and memory, then it is incumbent upon the propounder of said alleged will, in this case Miss Shannon, to show, by a legal preponderance of the evidence as I have defined it to you, that the alleged testator was at the time of the execution of such will possessed of sufficient mental capacity to make a will; that is to say, that he had sufficient intellect to enable him to have a decided and rational desire as to the disposition of his property and to understand and carry in his mind, in a general way, the nature, extent, and situation of his property and his relations to those who naturally have some claim to his remembrance.

"If you should find that the evidence does not preponderate to show that he had such capacity, then you would inquire no further, but would find against the will. If, however, you should find that the evidence does preponderate to the effect that he had such capacity as I have defined to you, then you would inquire whether or not the evidence preponderates to the effect that, notwithstanding such general sanity, the alleged testator was afflicted with insanity or monomania as I have described it to you. If it does so preponderate, and it should not further appear by a preponderance of the evidence that the alleged will was not the result or product of, or in any way influenced by or connected with, such monomania, then and in that event also you would find against the will. But, on the other hand, if you should find that the evidence preponderates in favor of the general sanity of the alleged testator, and further that it does not appear by a preponderance of the evidence that said testator was afflicted with partial insanity or monomania, or, if so, that the will was not the result or product thereof, or in any way influenced by or connected therewith, then and in that event you would find in favor of the will."

We do not think the refusal to give this lengthy requested charge was error. To a certain extent it is argumentative; and in the second place, the questions dealt with were covered by pertinent instructions given in the general charge.

7, 8. The rulings made in the 7th and 8th headnotes need no elaboration.

*Judgment affirmed. All the Justices concur, except Atkinson and Hill, JJ., disqualified.*